IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ACE AMERICAN INSURANCE COMPANY, a Pennsylvania Corporation; | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | |
| EXIDE TECHNOLOGIES, INC., also known as Exide Technologies, and formerly known as Exide Corporation, a Delaware corporation; THE WATTLES COMPANY, a Washington corporation, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT FOR DECLARATORY RELIEF

COMES NOW Plaintiff, ACE American Insurance Company, by and through its undersigned attorneys of record, and for its Complaint against the Defendants, states and alleges as follows:

## I. PARTIES

1.      Plaintiff, ACE American Insurance Company ("ACE") is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania, doing business in various states, including the state of Georgia.

2.      Defendant Exide Technologies, Inc. ("Exide"), is a Delaware corporation with its principal place of business in Milton, Georgia, and doing business in the state of Georgia. CT Corporation System, 1201 Peachtree Street, Atlanta, Georgia is Exide's Registered Agent for service of process.

3.      Defendant The Wattles Company ("Wattles") is a Washington corporation with its principal place of business in Enumclaw, Washington, and doing business in the state of Georgia related to the facts, issues, lease(s), and insurance policies relevant to the allegations in this lawsuit. Craig B. Wattles, 35800 249th Av. SE, Enumclaw, Washington is The Wattles Company Registered Agent for service for process.

## II. JURISDICTION AND VENUE

4.      This Court has jurisdiction over the parties and the subject matter of this lawsuit.   Defendant Exide is a Georgia corporation.   Defendant Wattles transacted business in Georgia related to Defendant Exide's lease of Wattles' warehouse in Sumner, Washington, and also in connection with Exide's alleged breach of the lease, thus conferring personal jurisdiction over Wattles under Ga. Code Ann. § 9-10-91.  The amount in controversy exceeds $75,000, exclusive of interest and costs, thus conferring jurisdiction under 28 U.S.C. § 1332.  Venue is proper in this Court under 28. U.S.C. § 1391(b)(2) because a substantial part of the

2

events or omissions giving rise to this lawsuit occurred in the Northern District of Georgia, and under 28 U.S.C. § 1391(b)(3) because all defendants are subject to the Court's personal jurisdiction due to their transacting business in the state of Georgia.

### III.  <u>FACTUAL BACKGROUND</u>

5.     As part of a package policy issued on Manuscript Forms drafted by Exide's insurance brokers at Marsh USA, Inc., operating out of Marsh's Atlanta, Georgia, offices, and with overall property damage limits of $300,000,000 per occurrence excess of deductibles, ACE issued an All Risks Property Damage and Business Interruption Policy, No. PGLN1928247 ("the ACE Policy"), to Exide for the term September 1, 2006, to September 1, 2007, for 20% of the overall limits. A true and correct copy of the ACE Policy is attached as **Exhibit A** to this Complaint.

6.     As part of a package policy issued on Manuscript Forms drafted by Exide's insurance brokers at Marsh USA, Inc., operating out of Marsh's Atlanta, Georgia, offices, and with overall property damage limits of $300,000,000 per occurrence excess of deductibles, Allianz Global Risks US Insurance Company ("Allianz") issued a Commercial Lines Policy, No. 3007622 ("the Allianz Policy"),

to Exide for the same term, September 1, 2006, to September 1, 2007, for 12.5% of the overall limits.

7.     As part of a package policy issued on Manuscript Forms drafted by Exide's insurance brokers at Marsh USA, Inc., operating out of Marsh's Atlanta, Georgia, offices, and with overall property damage limits of $300,000,000 per occurrence excess of deductibles, American Home Assurance Company, a Member of American International Group, Inc. ("AIG") issued a Commercial Lines Policy, No. 2611232 ("the AIG Policy"), to Exide for the same term, September 1, 2006, to September 1, 2007, for 20% of the overall limits.

8.     Wattles is the owner of real property located at 1911-2005 Fryar Avenue in Sumner, Washington ("the Premises"), which largely consisted of a warehouse building.

9.     Wattles leased the Premises to Exide and its predecessors in interest for nearly 28 years—from August 1981 to September 2009—under a number of consecutive written lease agreements including, but not limited to, a 10-year lease commencing in August 1999.  Beginning in October 2009, Exide leased only an office space and a portion of the warehouse on the Premises, and by some point in 2012 or 2013, Exide vacated the Premises entirely.

10.    The 10-year lease that commenced in August 1999, and potentially other leases before it, involved communications, negotiations, correspondence, and other business contacts and transactions by Wattles in the state of Georgia. Wattles also transacted a variety of other business in Georgia over the years during which it did business with Exide, including, but not limited to, correspondence with Exide concerning the payment of insurance premiums and real property taxes related to the Premises located in the state of Washington, past-due utility invoices, and various other particulars relating to the Premises and the lease(s) between Wattles and Exide regarding Exide's use of the premises for its battery formation operations.

11.    Subject to their terms, conditions, limitations, and exclusions, the ACE Policy, the Allianz Policy, and the AIG Policy issued to Exide insured against damage, to the extent of Exide's insurable interest therein, to the Premises leased to Exide by Wattles.

12.    From about 1984, and through 2009, Exide used the Premises for battery formation operations, including lead battery filling and charging.

13.    While the use of sulfuric acid was an expected part of Exide's known battery formation operations taking place on the Premises during the term of the lease(s), Wattles alleged that Exide was negligent, and in breach of the lease(s)

with Wattles, by allowing sulfuric acid mist to circulate in the warehouse space and ultimately condense onto various building components or substrates, most notably the warehouse's concrete floors and walls and its wooden overhead roof structural components.     Wattles alleged the warehouse building was "contaminated" and further alleged that the sulfuric acid accumulation and contamination had physically damaged the warehouse's wooden roof trusses and caused a loss of strength thereto.

14.    After Wattles made the allegations set forth in Paragraph 13, above (and fully incorporated herein by this reference) against Exide Wattles and/or its representatives—including, but not limited to Wattles' legal counsel—had further business dealings and transactions in the state of Georgia by way of directing correspondence—including demand letters and emails—to Exide's in-house counsel in Georgia.

15.    Exide's performance under the August 1999 lease with Wattles, and potentially other leases before it, and insurance obligations, if any, associated with Wattles' allegation that Exide breached the lease(s) arise out of Wattles' business contacts and transactions in the state of Georgia.

16.    In March 2013, Wattles filed a lawsuit against Exide in the state of Washington.   The lawsuit was filed in the Pierce County Superior Court under

Cause No. 13-2-07695-6 ("Pierce County lawsuit").  In the Pierce County lawsuit, Wattles alleged Exide was negligent and in breach of Exide's obligations under the lease(s) with Wattles and that Exide's actions/omissions proximately caused the sulfuric acid damage to the warehouse's wooden roof trusses and other building components.  Wattles sought damages against Exide for property damage and Wattles' other asserted costs, damages, losses, and/or expenses resulting from the alleged contamination and structural damage to the Premises.

17.    In June 2013, Exide filed for bankruptcy protection in the U.S. Bankruptcy Court for the District of Delaware due to Exide's liabilities, including a number of environmental and other claims against Exide across the country. This resulted in a stay of Wattles' claims against Exide in the Pierce County lawsuit.

18.    On March 27, 2015, the U.S. Bankruptcy Court for the District of Delaware issued an Order Approving Stipulation Between the Debtor [Exide] and The Wattles Company to Lift the Automatic Stay for a Limited Purpose ("Bankruptcy Court Order").  On April 6, 2015, the Superior Court of the State of Washington in and for Pierce County entered a Notice of Order Lifting Stay ("Order Lifting Stay"), attaching the Bankruptcy Court Order as an exhibit thereto.

A true and correct copy of Order Lifting Stay and the attached Bankruptcy Court Order are attached as **Exhibit B** to this Complaint.

19.    The Stipulation approved by the Bankruptcy Court Order reveals the parties' goal was for Wattles to obtain relief from the stay of the Pierce County lawsuit so as to:

> enable Wattles to prosecute the [Pierce County lawsuit] to final judgment or settlement and to engage in one or more legal actions with [Exide]'s insurers to collect against [Exide]'s insurance coverage; *provided, however*, that Wattles may attempt to recovery any liquidated final judgment or settlement with respect to the [Pierce County lawsuit] solely from the insurance coverage, if any, available under one or more insurance policies issued to [Exide] that cover the [Pierce County lawsuit] (the "Available Coverage") and *provided further* that [Exide]'s insurers reserve their rights, defenses, and arguments they may have in any action with Wattles.

**Exhibit B**, Stipulation Between the Debtors and The Wattles Company to Lift the Automatic Stay for a Limited Purpose at pp. 2-3 (underline and italics in original). As a result of the lifting of the stay, Wattles could attempt to recover any final judgment or settlement with respect to the Pierce County lawsuit without exposing Exide's assets and without impacting or diminishing the assets comprising Exide's bankruptcy estate.

20.    The ACE Policy is not a "polic[y] issued to [Exide] that cover[s] the [Pierce County lawsuit]," which the Stipulation adopted by the Bankruptcy Court Order calls Exide's "Available Coverage."  With the potential exception of some obligation which may be found to reimburse Exide (and only Exide) for Defense Costs (if triggered and if all conditions are met) under the limited Defense Costs provision, the ACE Policy does not "cover" Exide for any aspect of any liabilities it may be adjudged to have—or any amounts it may be adjudged to owe—to Wattles through the Pierce County lawsuit.

21.    The specific terms of the Stipulation Between the Debtors [Exide] and The Wattles Company to Lift the Automatic Stay for a Limited Purpose, which the Bankruptcy Court Order approved, and upon which the Superior Court of the State of Washington based its Notice of Order Lifting Stay, ACE, as well as any other insurer against which the lifting of the Stay permits Wattles to attempt to make a

claim, "reserve their rights, defenses, and arguments they may have in any action with Wattles."

22.    The Stipulation approved by the Bankruptcy Court's Order, and appended to the Order Lifting Stay, lists six insurers/insurance policies issued to Exide against which Wattles could attempt a recovery, which list included the ACE Policy in effect from September 1, 2006, to September 1, 2007, which afforded 20% of the overall coverages afforded under the package policy issued on Manuscript Forms drafted by Exide's insurance brokers at Marsh USA, Inc., operating out of Marsh's Atlanta, Georgia, offices, with Allianz affording 12.5% of the overall coverage, AIG affording an additional 20% of the overall coverage, and other insurers affording the balance of the total.   The Stipulation identified the ACE Policy as follows:

> **ACE American Insurance Company, et al.**
> Policy Number:  PGL N 19 28 24 7
> Policy Period:  9/1/2006 – 9/1/2007
> Named Insured:  Exide Technologies

**Exhibit B**, Stipulation Between the Debtors and The Wattles Company to Lift the Automatic Stay for a Limited Purpose.  Of the six Exide policies enumerated in the Stipulation and incorporated into the Bankruptcy Court Order and Notice of Order Lifting Stay, the ACE Policy is the only policy affording first-party property

insurance coverage to Exide.  All of the other enumerated policies offer some form of third-party liability coverage(s) to Exide.

23.    On April 3, 2015—over two years after Wattles had filed suit against Exide in March 2013 in Pierce County, Washington and more than 4 years after Exide received notice of Wattles claim- Exide, for the first time, gave ACE notice of Wattles' claims against Exide and Wattles' lawsuit against Exide in Pierce County for which the stay had been lifted under the Bankruptcy Court Order's stated conditions.

24.    On May 4, 2015, ACE, through its General Agent, Starr Technical Risks Agency, Inc. ("StarrTech"), acknowledged receipt of Exide's notice, confirmed issuance of the Policy, reserved ACE's rights, and, among other things, noted the Policy affords "commercial property insurance coverage" but does <u>not</u> afford "Pollution Liability Coverage."  The letter also quoted the Policy's limited coverage for Defense Costs, as follows:

**F. Defense Costs:**

This Policy, subject to all of its provisions, also insures the costs and fees to defend any claim or suit against the Insured alleging physical loss or damage as insured against to property of others in the care custody or control of the Insured to the extent of the Insured's liability therefor, even if such claim or suit is groundless, false or fraudulent; but the Underwriters may without

prejudice make such investigation, negotiation, or settlement of any such claim or suit as it deems expedient.

Coverage hereunder shall apply solely in respect of costs and fees incurred in connection with the defense of any suit(s) or part of any suit(s) which make claims for the value of physical loss or damage to property and shall in no circumstances extend to cover cost and fees incurred in connection with any further amounts.

The maximum amount of expense incurred by the Underwriters in respect of such defense, which amount shall be included with and not additional to the total amount of the loss to which this policy's limits and deductibles shall be applied, shall not exceed the amount stated therefor in the schedule.
Subject to a sublimit of USD $500,000.

**Exhibit A**, ACE Policy, ¶ 8.F. *Coverage Extensions – Defense Costs*, p. 22.

ACE's May 4, 2015, letter also inquired as to whether Exide was seeking a defense of the Wattles' lawsuit against it in Pierce County, Washington, under the Policy's Defense Costs provision; because ACE understood one or more of Exide's liability insurers had accepted its tender of defense of the Wattles' lawsuit in Pierce County, Washington.

25.    In late January 2016, Exide advised that it was seeking both a defense (because it was about to "exhaust" its "lowest available retention" of $500,000 in underlying defense costs afforded under a Pollution Liability Policy issued by XL

12

Group) and a general coverage/indemnity determination under the ACE Policy. Although it had not presented a Proof of Loss or otherwise made a formal claim to ACE, Exide requested a written coverage determination. ACE provided its preliminary coverage analysis in a March 4, 2016, letter to Exide's insurance brokers at Marsh USA, Inc. Allianz sent its own separate coverage analysis and reservation of rights letter to Exide also dated March 4, 2016. AIG had earlier sent its coverage analysis and reservation of rights letter to Exide on November 6, 2015.

26. ACE's March 4, 2016, coverage analysis and reservation of rights letter to Exide's brokers advised that ACE had concerns about Exide's insurable interest in the damage alleged to have occurred to the Premises given that Exide was merely a tenant of Wattles and pointed out various limitations and conditions on the ACE property policy's limited coverage for Defense Costs—including, but not limited to, the $500,000 sublimit for Defense Costs coverage; the $2,000,000 "per occurrence" deductible applicable to the Defense Costs coverage; and the Defense Costs coverage's specific application only to costs and fees incurred in connection with the defense of lawsuits or portions thereof "which make claims for the value of physical damage to property and shall in no circumstances extend to cover costs and fees incurred in connection with any further amounts." As such, ACE's March 4, 2016, letter also advised the ACE Policy would, at best, only

13

respond to cover costs and fees relating to Exide's defense of allegations by Wattles that Exide owes Wattles for repair of property damage only. The ACE Policy creates no obligation by ACE to defend against Wattles' economic loss claims against Exide. In short, ACE concluded the Defense Costs provision offered no "coverage" to Exide other than reimbursement of Defense Costs under its stated terms. Consequently, for the Defense Costs provision to be implicated, ACE advised Exide that Exide had to "incur over $2,000,000 in covered damages, inclusive of Defense Costs," in the Pierce County lawsuit. ACE's March 4, 2016, letter also provided ACE's general coverage/indemnity analysis under the ACE Policy, indicating that the ACE Policy afforded no coverage to indemnify Wattles for the alleged property damage and related damages and/or that various Policy exclusions (including, but not limited to, exclusions for the cost of making good defective design or faulty workmanship, ordinary wear and tear, corrosion and gradual deterioration, and the fact that there was no "collapse") applied to defeat coverage. The only coverage available was for Defense Costs, but because the conditions under which the Defense Costs provision would be implicated had not been satisfied, there was no coverage available to Exide under the ACE Policy in connection with Exide's defense of the Wattles' lawsuit in Pierce County, Washington.

27.    Allianz's March 4, 2016, coverage analysis and reservation of rights letter to Exide's brokers contained similar concerns and analyses to those in ACE's March 4, 2016, letter, but also quoted and analyzed the Allianz Policy's Seepage and/or Pollution and/or Contamination Exclusion Clause, found in its Additional Limitations and Conditions Endorsement (Amended), concluding it applied to bar coverage for anything other than Defense Costs, assuming all conditions and limitations relating to the Defense Cost coverage were satisfied, which Allianz concluded was not the case.  A true and correct copy of the Additional Limitations and Conditions Endorsement (Amended) (Form AGRG-CP M3007622-01), which contains the Seepage and/or Pollution and/or Contamination Exclusion Clause at Paragraph III, is attached as **Exhibit C** to this Complaint and its contents are incorporated fully herein by this reference.

28.    AIG's November 6, 2015, coverage analysis and reservation of rights letter to Exide's brokers contained similar concerns and analyses to those in ACE's March 4, 2016, letter, but also quoted and analyzed the AIG Policy's Seepage and/or Pollution and/or Contamination Exclusion Clause, found in its Additional Limitations and Conditions Endorsement (Amended), concluding it did not apply because there was no coverage/indemnity afforded Exide under the AIG Policy for Wattles' lawsuit against Exide in Pierce County, Washington.  AIG's Seepage

15

and/or Pollution and/or Contamination Exclusion Clause was materially similar to the one contained in the Allianz Policy.

29.    ACE's investigation has revealed that the ACE Policy, too, was intended by Exide and ACE to contain a Seepage and/or Pollution and/or Contamination Exclusion Clause materially similar to that in the Allianz Policy forms and the AIG Policy forms.  Moreover, even though the ACE Policy at issue here, in effect from September 1, 2006, to September 1, 2007, did not appear to contain the Seepage and/or Pollution and/or Contamination Exclusion Clause among its policy forms, the immediate predecessor policy issued to Exide through StarrTech by AIG/Birmingham Fire Insurance Company of Pennsylvania— No. ST-260-95-13, for the 2005-2006 policy year (effective September 1, 2005, to September 1, 2006)—did contain the Seepage and/or Pollution and/or Contamination Exclusion Clause.  All parties to the relevant ACE Policy effective September 1, 2006, to September 1, 2007, Exide and ACE,  intended, expected, and negotiated for a policy with a Seepage and/or Pollution and/or Contamination Exclusion Clause materially similar to that in the Allianz Policy and AIG Policy. The only reason the ACE Policy forms do not include the Endorsement containing this Exclusion is due to mutual mistake of all of the contracting parties, including Exide, Exide's brokers Marsh USA, Inc., and ACE.

30.   The ACE Policy contains a Georgia choice-of-law provision, as follows:

**CHOICE OF LAW:**

**Applicable when the address of the Insured stated in the schedule is in the United States of America:**

> The law under which the terms and conditions of this Policy shall be interpreted shall be the law of the State of Georgia.

31.   Trial commenced on Wattles' lawsuit against Exide in Pierce County, Washington, on April 26, 2016.   The trial is ongoing at the time of the filing of this Complaint.

## IV.  CAUSES OF ACTION
## FIRST CAUSE OF ACTION:  REFORMATION OF CONTRACT

32.   ACE realleges and, by this reference, incorporates as though fully set forth herein, all prior allegations in this Complaint

33.   All parties to the ACE Policy and its negotiations and formation—including Exide, its insurance brokers at Marsh USA, Inc., and ACE and its agents—expected, intended, and negotiated for an ACE Policy that included a Seepage and/or Pollution and/or Contamination Exclusion Clause materially similar to that in the Allianz Policy forms and the AIG Policy forms, and which

was also present in the immediate predecessor policy issued to Exide through StarrTech.

34.   The ACE Policy forms do not contain this exclusion by virtue of mutual mistake of the contracting parties.

35.   ACE is entitled to Reformation of the above referenced insurance contract to accurately reflect the intention of the parties to the ACE Policy under general contract principles, equity, and Georgia law.

## SECOND CAUSE OF ACTION: DECLARATORY RELIEF RE: DECLARATION OF NO COVERAGE

36.   ACE realleges and, by this reference, incorporates as though fully set forth herein, all prior allegations in this Complaint and seeks a declaration as follows:

37.   The ACE Policy is a first-party property policy that does not afford Exide any coverage for any damage to the Premises in Pierce County, Washington, for at least the following reasons:

A.   Exide lacks a sufficient insurable interest in the Wattles warehouse property;

B.   Exide has failed to satisfy Policy Conditions including:

1.     Presentation of a timely notice of loss required by the Policy (*see* **Exhibit A** (ACE Policy), at *All Risks Property Damage and Business Interruption*, ¶ 24. *Notice of Loss*, p. 36);

2.     Presentation of a timely claim by Sworn Statement in Proof of Loss or as otherwise required by the ACE Policy (*see id.* at *All Risks Property Damage and Business Interruption*, ¶ 25. *Proof of Loss,* p. 36).

C.     The ACE Policy excludes coverage for any damage for which Exide provided Notice of Loss pursuant to at least the following provisions:

1.     Seepage   and/or   Pollution   and/or   Contamination Exclusion Clause;

2.     Exclusion for the "cost of making good" any "defective design" or "faulty workmanship" (*see* **Exhibit A** (ACE Policy), *All Risks Property Damage and Business Interruption*, ¶ 10.B. *Perils Excluded*, p. 26);

3.     Exclusion for "ordinary wear and tear, depletion, rust, corrosion, erosion or gradual deterioration" (*see* **Exhibit A** (ACE Policy), *All Risks Property Damage and Business Interruption*, ¶ 10.D. *Perils Excluded*, p. 26).

38.    The ACE Policy is not a "polic[y] issued to [Exide] that cover[s] the [Pierce County lawsuit]," which the Stipulation adopted by the Bankruptcy Court Order calls Exide's "'Available Coverage'" Exide has against which Wattles may proceed due to the limited lifting of the stay.  With the potential exception of some obligation which may be found to reimburse Exide (and only Exide) for Defense Costs (if triggered and if and all conditions are met) under the limited Defense Costs provision, the ACE Policy does not "cover" Exide for any aspect of any liabilities it may be adjudged to have to—or any amounts it may be adjudged to owe—to Wattles through the Pierce County lawsuit.  The ACE Policy is a first-party property policy that does not afford liability coverage, and which does not afford indemnity to Exide in relation to the lawsuit against Exide by Wattles in Pierce County, Washington.

39.    Exide has failed to satisfy the conditions precedent to coverage for the limited Defense Costs coverage of $500,000—including but not limited to, the ACE Policy's specific limitation of the Defense Costs coverage to defense of "claims for the value of physical damage to property (which excludes Exide's defense costs associated with Wattles' economic loss claims), and the ACE Policy's $2,000,000 per occurrence deductible for the Defense Costs coverage—

have not been satisfied because Exide has not incurred $2,000,000 of covered damages, inclusive of Defense Costs.

40.     Wattles' lawsuit against Exide is presently being tried in Pierce County, Washington.   If, at the conclusion of trial, judgment is entered against Exide in favor of Wattles, there will be no coverage or indemnity owed to Exide under the ACE Policy for any portion of the judgment amount.   Consequently, Wattles, as a judgment creditor, will also have no right under the ACE Policy, law, or equity, to collect any portion of any such judgment from ACE.

41.     Wattles is not an Insured under the ACE Policy issued to Exide, and has no legal or equitable right to pursue any recovery under the ACE Policy.

42.     There is a present, actual, and justiciable controversy between the parties regarding ACE's obligations, if any, to cover or reimburse any part of any judgment Wattles might secure against Exide in the trial of Wattles' lawsuit in Pierce County, Washington.   The parties also disagree as to the application conditions of the Policies' Defense Costs provision and whether Exide has met the conditions precedent to implicate the Defense Costs provision.

43.     ACE has adhered to all Policy provisions and conditions, has otherwise adhered to all applicable insurance laws and regulations, and has not engaged in any acts or omissions that would prevent, preclude, or estop it in any

way from asserting any and all claims and defenses available to it under the ACE Policy, law, or equity.

## V. <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs ACE American Insurance Company ("ACE") prays for judgment and relief as follows:

1.      An Order reforming the ACE Policy to include a Seepage and/or Pollution and/or Contamination Exclusion Clause materially similar to that in the Allianz Policy and the AIG Policy—and which was also present in the policy issued for the earlier policy year of 2005-2006;

2.      An Order declaring that, once reformed, the ACE Policy's Seepage and/or Pollution and/or Contamination Exclusion Clause bars coverage for any liabilities Exide may be adjudged to have—or any amount Exide may be adjudged to owe Wattles—as a result of the conclusion of the trial of Wattles' lawsuit against Exide in Pierce County, Washington;

3.      An Order declaring that Exide has no insurable interest in the Wattles warehouse property in Sumner, Washington:

4.      An Order declaring that Exide failed to satisfy conditions precedent to coverage under the ACE policy, including but not limited to failure to provide

timely notice of the loss, and is therefore precluded from any recovery under the Policy;

5.      An Order declaring the ACE Policy affords no coverage to Exide, its successsors, predecessors, assigns, or judgment creditors of any tier or nature;

6.      An Order declaring the ACE Policy is not a "polic[y] issued to [Exide] that cover[s] the [Pierce County lawsuit]" as set forth in the Stipulation Between the Debtors and The Wattles Company to Lift the Automatic Stay for a Limited Purpose, adopted by the Bankruptcy Court Order and incorporated into the Notice of Order Lifting Stay in the Pierce County lawsuit;

7.      An Order declaring that, to the extent Exide is found to have an insurable interest in the Premises it leased from Wattles in the years before 2010, that no Defense Costs are owed by ACE;

8.      An Order that, to the extent Wattles secures a judgment against Exide in the trial of the Pierce County lawsuit, as a judgment creditor, it has no right or standing under the ACE Policy, law, or equity, to collect any portion of any such judgment from ACE and that ACE does not owe any obligation under the insurance contract, law, or equity to satisfy any portion of any such judgment to Wattles;

9..    An Order awarding ACE any and all attorneys' fees or other litigation costs deemed appropriate under the insurance contract, law, or equity; and

10.    An Order for such other and further relief as this Court deems just and equitable.

Respectfully submitted this 18th day of May, 2016.

> *s/Wayne D. Taylor*
> WAYNE D. TAYLOR
> Georgia Bar No. 701275
> MICHELLE A. SHERMAN
> Georgia Bar No. 835980

MOZLEY, FINLAYSON & LOGGINS LLP
One Premier Plaza, Suite 900
5605 Glenridge Drive
Atlanta, Georgia 30342
Tel: (404) 256-0700
Fax: (404) 250-9355
wtaylor@mfllaw.com
msherman@mfllaw.com

> *s/Scott M. Stickney*
> Scott M. Stickney, WSBA No. 14540
> *To be admitted Pro Hac Vice*

WILSON SMITH COCHRAN DICKERSON
901 Fifth Avenue, Suite 1700
Seattle, WA  98164
Tel: (206) 623-4100
Fax: (206) 623-9273
stickney@wscd.com

> *Attorneys for Plaintiff ACE American Insurance Company*

24